## GENERAL MOTORS CORPORATION v. DEPPE et al.

Circuit Court of Appeals, Third Circuit.
June 7, 1927.

Rehearing Denied August 23, 1927.

No. 3581.

**Patents ⬯328—Deppe, 1,335,665 and 1,360,- 098, for internal combustion engine, held not infringed.**

In the Deppe patents, No. 1,335,665 and No. 1,360,098, for method of preparing explosive mixture for internal combustion engines and apparatus for practicing the same, a rotating mechanical mixer is an essential element, and the patents *held* not infringed by apparatus in which such element is not used.

Appeal from the District Court of the United States for the District of New Jersey; Wm. N. Runyon, Judge.

Suit in equity by William P. Deppe and another against the General Motors Corporation. Decree for complainants, and defendant appeals. Reversed and remanded, with instructions.

For opinion below, see 15 F.(2d) 419.

Melville Church, of Washington, D. C., and J. Lewis Stackpole and Frederick P. Fish, both of Boston, Mass., for appellant.

Livingston Gifford and Newton A. Burgess, both of New York City, for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. Having duly considered the mass of testimony in this record, the conflicting contentions of the experts, the detailed discussion in the briefs of the large number of questions which it is urged are here involved, and the comprehensive opinion of the court below, we have reached the conclusion that the case resolves itself into comparatively narrow limits. The important patent here involved is No. 1,- 335,665, granted March 30, 1920, to William

P. Deppe, for an internal combustion engine. That general field has been thoroughly exploited, due to the fact of the development for many years of stationary engines, and later of motorboats and automobiles, and later still in the air, so that in entering this field the patentee was a late comer.

The determination of this case rests on the answer to three questions: First, what did the patentee disclose in the gas engine art in his specification? Second, what monopoly of that disclosure did he obtain by his claims? Third, does the defendant use the claimed features?

Turning to the first, we note the specification states his purpose was to initially prepare a superheated dry gas for use in any sort of combustion chamber. This is set forth in the following language: "My invention relates more particularly to a method of preparing a superheated dry gas for use in internal combustion engines, or in combustion chambers of any suitable character, wherein gas of this character is adapted to be used. The object of the present invention is to prepare a fuel mixture gas from liquid hydrocarbons mixed with air, preferably at high temperature, and thoroughly integrated to produce a substantially stable gas, which upon introduction into the cylinders of an internal combustion engine will remain in gaseous form."

The object he has in view in so doing is to dispense with wet mixture methods and resort to dry ones, and thus utilize fuel of an inferior grade. This object he thus states: "The ordinary wet mixture methods cannot satisfactorily handle these hybrid mixtures, nor low grade fuel oil mixtures to operate like true gasolines, but my method is particularly devised for handling mixtures of this character. I have found that by my method the various constituents of a mixture of this character can be vaporized and gasified from stage to stage in the passage of the mixture through a suitable apparatus adapted to alternately compel the column to expand and contract and change its form. At the same time, my method includes heating the mixture thoroughly throughout at the time it is permitted to spread out or expand."

Without entering into a recital of the objections in the wet mixture method which he sets forth at length in his patent, he states: "To obviate these difficulties, I have evolved a method whereby highly heated air is charged with the proper amount of vapor or spray of the liquid hydrocarbons, and then the column of fuel mixtures is subjected to a sort of kneading process, and intermittently and repeatedly heated, until by the time it reaches the engine cylinders the mixture has been developed and integrated into a substantially uniform and homogeneous superheated dry gas, which will remain in this state during and after introduction into the cylinders."

And, describing his method generally, he states the various steps of his process as follows: "It is also well known that streams of gas, or vapor-charged gases, portions of which are of different densities or temperatures, are likely to become stratified and remain in this condition, unless physical means are used to mix or integrate them and break up the floating drops or globules of liquid. Therefore, in carrying out my method, I prefer to churn the mixtures at one stage, in order to more completely atomize the liquid particles and prevent stratification. The succeeding stages in my method may be likened to a kneading process, because the fuel mixture is squeezed or contracted, preferably in cylindrical form, and then spread out into sheet form and permitted to expand slightly, at the same time being heated. This treatment of the fuel mixture has the effect of completely gasifying and integrating the mixture, the last stage of heating being adapted to superheat the gaseous mixture, the constituent elements of which have become gaseous, sufficiently to maintain it as such until it is used in the cylinders of the engine, or in other suitable combustion chamber."

It will be noted from the above that he mixes the stratified zones or sections of gas by physical means, which are "used to mix or integrate them and break up the floating drops or globules of liquid," and that one step of his process is "to churn the mixture at one stage, in order to more completely atomize the liquid particles and prevent stratification." How this is done he points out. He shows that, after the incoming gas has passed the throttle valve, he inserts "a mechanical mixer 15 of any suitable rotating type, such, for instance, as is shown in the Schlayer patent, No. 1,007,010, of October 24, 1911. This form of rotary mechanical mixer has the property of churning and breaking up the fuel particles carried along in the highly heated air, and atomizing them in such a way that they can be more highly heated and completely gasified." That this rotating mechanical mixer is an essential functional part of his apparatus and method, and that it does something which a throttle valve does not do, is made clear by the above extract, and that it is a preliminary step to the heating stages which follow is

shown by his referring to it later on, viz.: "Immediately succeeding the churning portion *14* of the conduit there is a flattened portion *16*."

· It will thus be seen that the gas which passes through the throttle is in an objectionable form, and has not had the benefit of his method, but that his method begins after the throttle has admitted the gas, and the first step in his process is this mechanical rotating mixer, which is one of such a marked character of mechanism as can be patented. As we view it, his method of preparing his mixture and the product resulting therefrom are generically described in his tenth claim, which reads as follows: "The method of preparing an explosive mixture for combustion in heat and power units, which consists in charging a moving stream of highly heated air with liquid fuel spray, metering the flow, mechanically breaking up and diffusing the mixture while applying heat, thereby producing vapor and wet gas, then highly heating the mixture at predetermined successive stages, to progressively raise the temperature of the mixture above the boiling points of the liquid fuels, whereby a homogeneous dry gaseous mixture in a superheated state is produced, adapted to maintain itself as such during and after delivery to the heat or power unit." And the combinations of the various other claims in issue, while covering the elements therein specified, are of course dependent for practical use on the general co-operating features which constitute his method as embodied in the tenth claim.

Seeing, then, that the specification makes the mechanical rotating mixer an essential foundational step in his process, and that no other process than one embodying such a mechanical rotating mixer is disclosed in the specification, and that this feature is embodied in his generic claim, we award him full protection for that which he disclosed, by giving him a monopoly which embodies inter alia this mechanical rotating mixer as a step in his process. Such being the nature of his disclosure, and the mechanical rotating mixer function being part of his claim, it follows that the third question, namely, Does the defendant make use of this process? must be answered in the negative. How they obtain and utilize their fuel mixture is apart from the real question involved in this case, for the decisive fact is that they simply do not use any mechanical rotating mixer, and to say that their throttle is an equivalent of the plaintiff's mechanical rotating mixer is simply to assert that the whole function of the plaintiff's mixture was previously done by the throttle valve instantaneously on the passage of the gas through it. Had such a contention been made in his application for a patent, and had no rotating mechanical mixer been shown by Deppe in his specification, the very basis on which his patent was sought for would have had no existence. So regarding the case, we are of opinion that infringement of his patent is not shown in defendant's practice.

What we have said above of the method patent applies with like force to apparatus patent, No. 1,360,098, granted to the same inventor November 23, 1920. In it the rotating mechanical mixer is shown, and is thus referred to in the specification: "I have also found that, in the preliminary formation of the mixture, it is essential to thoroughly atomize the fuel particles in the presence of heat, and this is accomplished by inserting a rotating, mechanical mixer at the entrance end of the manifold or riser directly in the path of the vapor charged air delivered from the carbureter. * * * Referring more particularly to the form shown in Figs. 1 and 2, it will be seen that my improved superheater manifold comprises a riser *1*, the lower end of which is provided with a flange *2* adapting it to be secured to the outlet end of a carbureter. The lower end of the riser is also provided with means at *3* for securing within the conduit a rotatable mechanical mixer *4* which is preferably substantially of the forms shown in my patent No. 1,189,797, of July 4, 1916, or in the patent to Schlayer, No. 1,007,010, of October 24, 1911. * * * It will be seen that the first treatment of the mixture is given by the mechanical mixer *4* which has the effect of atomizing and churning the particles of liquid fuel and thoroughly mixing them with the air."

We accordingly hold infringement of neither patent has been shown, and the cause will be remanded, with instructions to vacate the decree entered, and to enter an order dismissing the bill.